The next case is 071119, General Injectables v. Vaccines v. the Secretary of Defense. Mr. Feder. Good morning, Your Honors. I'm pleased to report my name is Bruce Feder. I'm representing the appellant, G.I.V. I think I can summarize very briefly for the Court the two bases on which the Board's decision below should be reversed. One has to do with the unfulfilled condition preceded in the contract, and the other is the enforcement short clause, which would have excused performance even if it had been due. Four quick points on the condition preceded, if I may.  Quote, dependent on FDA release of vaccine weren't there. That violates the basic rules of construction. May I steal this water? Yes. Thank you. Am I not speaking loud enough, Judge Fogel? I can hear you. Okay, nice. That violates several basic rules of construction. One is the plain reading rule, and two is the rule that all words in a contract must be given meaning, if at all possible. It isn't a small issue. The contract doesn't say, quote, but in any event, G.I.V. must deliver 100% by November 30, 2004, which is what the government is arguing in effect it says. Two, the government had the burden of proof on the breach issue. The government's answer doesn't even claim that there was some other intention. If I can draw the court's attention to the allegation in the complaint at page A140, paragraph 38, the allegation reads, quote, D.O.D. awarded the contract to G.I.V. with full knowledge that Chiron's shipment and FDA release of saleable product to the United States was a condition precedent to G.I.V.'s obligation to deliver flu vaccine under the express terms of the contract. And now if I can call the court's attention to the government's answer, at page A160, all the government says is, paragraph 38, admitted to the extent supported by the contract, which is the best evidence of its contents, otherwise denied. If the government, if D.O.D. believed that the parties had some other intention, it was incumbent on it to say more than admits to the extent supported by the contractual language, because G.I.V.'s position is supported by the contractual language. Plus, D.O.D. moved for summary judgment, but offered no evidence that the parties intended anything other than the plain meaning of the words. In fact, on this appeal, G.I.V., I'm sorry, the government, admits in its brief at page 6, quote, the contract stated that delivery was dependent upon FDA release of the vaccine. Three, on the condition proceeding point, the prevention doctrine doesn't apply. The prevention doctrine is derived from the obligation of good faith that's instinct in every contract. Therefore, it requires an intentional act or omission that prevents the condition proceeding from happening for that doctrine to apply. So just hypothetically, if your client were directly responsible for the failure to deliver the vaccine, if we didn't have Chiron in the picture at all, and it was G.I.V. that had produced contaminated vaccine, and further, if it was a result of your client's negligence, in my hypothetical, that wouldn't invoke the prevention doctrine? There is authority in the Second Circuit to the effect that negligence is not enough to invoke. So they have a duty to deliver the vaccine, in my hypothetical, they're negligent, that's why it isn't delivered, and that's why the FDA doesn't release it, and the government's still bound? Yes, because of the contract, which says dependent on FDA release of the vaccine. If the government wanted it to be set up in a different way, then the condition proceeding couldn't be in the contract. Well, the government should have asked for some other provisions, but it doesn't apply in this circumstance, or it doesn't apply in that circumstance. For example, your honor's circumstance would have been, it's a good hypothetical for something the government could have asked for as a carve-out from the condition proceeding, but it didn't. Again, the burden of proof is on the government, on the prevention issue. We cited the cases in our brief, our opening brief at pages 23 to 25, very good discussion in the Mendoza case from the Fifth Circuit on that, and the bottom line is the board should have granted some rejectment to GIV on this issue. On the second point, this was plainly a force majeure situation. We don't have to reach the force majeure question if the court rules in favor of GIV on the condition proceeding point, but it also, it really was a force majeure for two reasons. One, the FDA embargoed and quarantined all of Chiron's flu vaccine that year based on bacteria found in only a small percentage of the lots, I think it was eight lots. That act of force majeure was compounded by CDC and HHS then taking control of the other manufacturer. There was only one other manufacturer of injectable flu vaccine that year. That was Aventis, which manufactures Fluzone, and CDC and HHS took control of that, and that prevented GIV from obtaining an alternative supply. Now, this fits the language of the force majeure, which is 5212.4F precisely, I believe. One, it's an act of the government, and it's a quarantine, so it hits it in at least those two respects, and two, it's without the fault of GIV and beyond its reasonable control, which distinguishes this situation from cases the government and the board relied on, like the Carnegie case, which as I recall didn't really involve a force majeure situation. It was a full Iran case, which really didn't involve a force majeure situation. Under this argument, who had the burden of proof as to whether it was the fault of your supplier? My client. And there wasn't any proof. I believe you said in your brief there wasn't any proof as to why Chiron produced contaminated vaccine. Now, the only thing in the record is the statement by Chiron itself, which is uncontradicted, that it was that accidental bacteria. I don't think it was, and I'm not sure it is even known today, what caused that bacterial contamination of those eight lots. Now, you mentioned the eight lots and that that resulted in the quarantine of the entire supply. I mean, you're not suggesting that that was an inappropriate response by the FDA, are you? As someone who takes the flu vaccine himself each year, I am comfortable with the decision of the FDA to do what it believes is in my personal safety. So I'm not suggesting at all that it was an inappropriate decision to do that, but it was a decision. It was a government decision. Well, I guess it calls into mind some other analogous type situations. If the tail fixture of a certain Boeing airplane has a tendency, shown in a couple of instances, to become unstable and threaten to or actually fall off, and the government comes in and just freezes all of the construction of the new aircraft of that sort, and Boeing, as a result, isn't able to meet contractual obligations, I would think that that wouldn't constitute force majeure. Let's assume in my hypothetical that it's clear that Boeing had a problem with respect to at least those aircraft. It's an excellent hypothetical, Your Honor. In fact, if Your Honor pounds me into the ground with it, I will quickly confess that the HHS and CDC part of the force majeure is clearly stronger than the first part, that is, the FDA action. But I do believe even the FDA action is an act of the government. It's a discretionary act of the government to take a certain action, which it did or didn't have to take to a greater or larger extent. So I'm not arguing that the action of the FDA was wrong in some way or a bad exercise of judgment, but it was an exercise of judgment. But it was an exercise of judgment precipitated by, at least hypothetically, the potential negligence of the supplier. I just don't know enough, Your Honor, about the details of the bacterial contamination. Right, but that would have been something that you would have had an obligation, I think, under your assumed burden of proof to actually present to the court, right? In other words, you're trying to say we fit within force majeure. It's our burden to show why. And if there isn't any demonstrated or obvious overreaction by any of the parties here, it seems to me that pretty much says you haven't met your burden. Well, again, let me carve out the HHS and CDC part of it, because that's not comprehended by Your Honor's question. There, the government really took an additional step beyond the FDA action and said, okay, we are now controlling all of the vaccine that's left in the country, which means you, GIV, really don't have the ability to cover, which is what would have happened in a normal situation, unless GIV also has contracts with Aventis. But that was a very unusual, in fact, a unique year, 2004. So the HHS-CDC part of it is really not part of Your Honor's question. On the first part of the question, it's trickier. It is. It's a very unfair question about because of the burden of proof. I think on the face of it, and given that the only thing in the record was the statement that it was accidental, I think the court should not have granted summary judgment against GIV on this without a more complete factual. But I don't think we need to reach that unless there are other grounds. All right. Let's hear from Mr. Bigler. May it please the Court, the Court should affirm the Board's decision of holding the termination for default of appellant General Injectables and Vaccines, or GIV's contract to supply flu vaccine to the Department of Defense because GIV completely failed to perform. GIV makes two arguments on appeal. First, that GIV's performance  And second, that GIV's performance was excused by a conditioned precedent. It's undisputed that GIV's failure to perform is excusable under the contract under the excuse clause which is contained in FAR Provision 52.212-4F. With respect to the conditioned precedent argument, GIV's performance was not excused by a conditioned precedent. It's undisputed that GIV did not perform. The FDA did not cause the problem. GIV and its supplier caused the problem. How do we know that? What evidence is there as to what caused the problem? We just know there was contamination. We don't know why there was contamination. That's true, Your Honor. But they've acknowledged in their brief that that was accidental. And if you look at the excuse clause that we've been looking at, the excuse clause gives examples of things that are excused. It's certainly not accidental things or things that happen in the contractor's own or the subcontractor's own factory. I don't think that's their main argument, though. They're saying the contract has a conditioned precedent that you need FDA approval. Didn't get FDA approval. The government's saying the reason you didn't get FDA approval was your own mistake. That's where the prevention doctrine comes into play. Well, for that, counsels of the view that there has to be an intentional act even if all you need is a negligent act, where is the proof that you even have that? It's true, Your Honor. There isn't proof that they were negligent, but we don't need that to show that they're still responsible. Doesn't the prevention doctrine require the contracting party to do something that prevents the fulfillment of the conditioned precedent? And if they don't do anything, if it's an act of God or it's an accident, how does the prevention doctrine come into play? There are some cases where they're saying that it had to be wrongful conduct. But there are certainly other cases that we cited that do not say that. I believe we cited it in our brief Precision Pine and Timber. And in that case, the court stated, it is a principle of fundamental justice that if a promisor is personally the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, the promisor cannot take advantage of the failure. The Precision Pine decision was quoting Williston on contracts. The word wrongful does not appear anywhere in that decision, Your Honor. Well, but the word cause does. And where's the chain of causation? Let's just make up a silly situation. Let's say that the Chiron factory in England was destroyed by a tornado. Is that fault attributable to G.I.B. in this case, such that they can be terminated for cause? No, Your Honor. Because? Because the excuse clause includes the acts of God. And as long as it's not at their fault, which it's not, and it's not the fault of their subcontractor, which it's not because their factory was wiped out by a tornado. All right, so how do we know in this case that it was Chiron's fault? They're the ones that manufactured the vaccine. They're the ones that made a vaccine that doesn't meet the specifications. But we don't know why. We don't need to know why, Your Honor. Suppose, let me follow up on Judge Vogel's question. Suppose that the reason for the failure to satisfy the FDA was that a terrorist threw some E. coli into the vat. Now, that might not fit within the act of God. I don't know whether it would or not. It would be, you would assume, at least without any further evidence, that that would be without fault of Chiron, right? You might. Certainly that's not this case. But would you think that that would be a case of falling outside the prevention doctrine? That is to say that under the condition preceding there would not be liability on GFD? I would agree with that, Your Honor. That it wouldn't fall outside the prevention doctrine. So it turns on the extent of the culpability of GFD? Or Chiron in this case? The supplier is expected to produce the product that the government contracted to purchase, which is a safe... Right, but that's not an absolute obligation, right? We understand that there are circumstances, whether it's the force majeure or the prevention doctrine that would fall within, or the absence of the prevention doctrine, that would give an excuse to the contractor for not producing. Now, my question, what I'm trying to get at is what is it that Chiron has to do wrong in order to trigger the prevention doctrine and therefore make failure of the condition preceding not a defense? Well, in this instance, it's failing to produce... Well, it has to be a failure carrying culpability. I think you agreed with me that in my terrorist case, they failed to produce a compliant vaccine, but it's not their fault, and therefore they get an excuse. Right. They didn't prevent the condition from occurring. The terrorists prevented the condition from occurring in that situation. How do we know that in this case there wasn't some cause that was outside of their responsibility or control? We don't, Your Honor, but under the excuse clause, the burden is on the G.I.B. to bring forward an excuse. Under the excuse clause, but how about under the condition preceding? Under the condition preceding, they argue loudly and strongly in their brief that the burden is on the government to show that the condition preceding does not apply, but they fail to cite a single case that supports that position. In the Fed Circuit, there are not decisions on that issue, but there are other cases in other circuits that under certain instances hold that the condition precedent is the responsibility of the party that breached. And here in the Fed Circuit, the court has held repeatedly that if the contractor fails to perform, the government has made a prima facie case of default, and at that point, it's up to the contractor to provide an excuse for that default. In this case, their excuse is that the condition preceding was not met. But why have the condition preceding at all, then, if it all gets subsumed in the excuse clause? I thought the whole point here in the record shows that the condition preceding was negotiated by the parties at arm's length. It's not a boilerplate provision. Since it's there, and it's clear that the condition preceding wasn't satisfied, how do you even get to the point of saying that there's been a breach? Well, the point of the condition preceding here was simply to excuse any delay that was caused by the FDA. I should get back to the actual schedule in the contract, which states, depending upon FDA release of the vaccine, delivery will be as follows. Twenty-five percent. Where are you in the contract? I'm on page 93. Page 93, okay. Okay, go ahead. This is about delivery. It says, depending upon FDA release of the vaccine, delivery will be as follows. And then it says, twenty-five percent by the end of September, twenty-five percent by the end of October, and fifty percent no later than November. So the purpose of this dependent upon FDA release language is that if the FDA sits on a shipment for a month and as a result GIV is not able to meet this 30 September deadline, then that delay is not GIV's fault and that delay would be excused. And if I could make one other point on the condition precedent, just looking at the contract, what GIV is basically arguing is that they have no obligation to perform if the FDA doesn't release the vaccine. But there are other phrases in the contract that they use different language. They're really arguing that their obligation to perform is dependent upon the availability of the vaccine. And that language was used in the contract for orders that are placed after May 15th. And it doesn't apply here because the government ordered the vaccine prior to May 15th, but it shows that if the parties wanted to add GIV's language to the delivery schedule, it could have, but it did not. And there, this is on A97 of the contract, the contract states, orders placed after May 15th, 2004, and that says in parentheses, dependent upon product availability, shall be delivered within one week of award date of the delivery order. What page is that on? I'm sorry, that was on A97. A97. And that shows that the parties knew the difference between delay caused by FDA that would be excused since it was not GIV's fault and just if the vaccine was not available. And looking at the excuse clause, which we've discussed briefly, what this excuse clause does is it really just takes the common law and puts that in the contract before the FAR provision was. It does not mention subcontractors. It certainly doesn't excuse subcontractors. And it's very similar to the phrase that was included in the Polaron Products case, and that clause also did not include subcontractors, but the court held that the contractor was liable for the faults of subcontractors. And the other arguments that GIV has made that the vaccine was quarantined by the FDA simply is not the case. A quarantine applies to sick people where the government says these people are sick and we're going to quarantine them because we don't want the disease to spread. You don't quarantine defective products. The products were not going to cause a problem. The flu vaccine wasn't going to cause a problem as long as it was not used. The excuse clause, as they point out in their brief, is different than some of the other FAR provisions that were not used. But the difference between this clause and those clauses are those clauses extend to subcontractors on down the line. And that's what they state. Those clauses start out, they say, except for defaults of subcontractors at any tier. The other one, 52-249-14A, states except for default of subcontractors at any tier. If those clauses would have been included, then GIV would be responsible for its subcontractor, and if its subcontractor made an agreement with another subcontractor, it would still be responsible for their fault. But in this case, in this clause, they're only responsible for things that are within their reasonable control and without their fault or negligence. So that would only apply to subcontractors that they're in privy to contract with, which is the case here. They stated in their brief that they ordered the vaccine directly from Chiron. And it was certainly, the burden was on them to show an excuse and say, no, they're farther down the line of subcontractors, and they did not provide any information. They didn't provide the contract with Chiron, and they didn't provide any affidavit to say that that was not the case. Getting back to the condition precedent, there is also evidence in the contract of what GID, when this was negotiated, originally the solicitation stated that it simply asked for a flu vaccine and did not mention the FDA or anything. And then GID responded to the government solicitation in its offer of February 13, 2004, and stated, quote, may have to alter delivery schedule outlined in bid due to release of vaccine. That's on page 827 of the appendix. So what GID was asking for was that the delivery schedule may be altered depending upon the release of the vaccine. And that's what I was stating earlier, that FDA language is simply provided to provide an excuse if the FDA causes a delay, not if GID causes a delay but if GID does perform a delay. Setting aside the question of how broadly the condition precedent clause applies, do you – I think you said earlier that you took issue with the cases cited in the appellant's brief with respect to the allocation of the burden of proof on the condition precedent slash prevention doctrine. Well, no, just with regard to the condition precedent, the burden is on the government and they cite some cases for that proposition. They cite cases, but those cases say that they don't involve a condition precedent. They state that the burden is on the government. But this is prevention or hindrance generally. I mean, you're saying that that's outside of the context of condition preceding prevention doctrine? They do. With regard to the prevention doctrine, there are cases that say that the burden is on the party that is applicable in this context? No, I agree that that's applicable, but if the court were to decide the condition precedent on the issue other than the prevention doctrine, they also said that the government has that burden and there's no support for that. Okay, thanks. All right, thank you. Mr. Bader? To be honest, very briefly, I think now that we have a clear government statement that it has the burden of proof on the prevention doctrine, I think that goes to some of the timing issues that counsel is really making. I think for the first time right now, because I don't believe it's in their brief, pulling a piece here and a piece there from different documents and arguing that something else was intended by the rather clear definition. I understood that to be in their argument previously. I don't believe so. Really? It rang a bell. That means deliver earlier, which made no sense because the clause says no later than, so obviously you can deliver earlier if the clause says no later than. They now seem to be arguing you could deliver later even though the clause says no later than, which the argument must fail for two reasons. One, the government has the burden of proof and has introduced absolutely no evidence that anybody ever had that in mind in the words dependent upon FDA releases. Two, it wouldn't have ever been agreed to in the real world because of the nature of the flu season. The flu season is limited to a few months. If GIV showed up in March of 2005 and delivered vaccine, the government would say, you must be kidding. What are we supposed to do with it? So counsel's argument is not only supported by no evidence, but there never would be any evidence to support it because it would be predicted by the reality of the flu season, which is why the contract says no later than, no later than, no later than because the flu season ends, I'm not sure precisely when, probably early January. So in order to get the vaccine to people, it really does need to be delivered in September, October, November exactly the way the contract contemplated. That's number one. Two, I know I'm going to get in trouble for saying this, but I believe your Honor, Judge Bryson's question to Mr. Bigler about E. coli is really the answer to your Honor's question to me because the FDA action was not based on anything GIV did or didn't do. So therefore, I think an additional answer to why it's a force majeure is because GIV did not cause the bacterial contamination and therefore when the FDA acted on it, I assume as your Honor did in the hypothetical items, E. coli, as far as GIV is concerned, that's a force majeure situation. The government acting on that. Well, but that gets back to the burden of proof question, I guess. I knew I was going to get in trouble. But it does get back to the burden of proof question. But I don't think there is anything in this record to suggest, I don't think even the government has suggested that GIV was at fault in any way in causing this. Well, GIV slash CHIRA. Right, but then you get into the contractual argument, which is one of the reasons the Polaron case is not on point because it's a pre-FAR case. There are now FARs that specifically would have made GIV liable for the acts of its subcontractors. I mean, CHIRA is a subcontractor. None of those clauses were used. The only clause that was used here was that the 52-12-4-F is limited to the actions of GIV. Well, but liability as opposed to the question of whether there's a breach seems to me possibly a different question. You may not be liable for torts, for example, of your subcontractor, but you may be liable for a breach by virtue of your subcontractor's failure to provide goods. I mean, for example, if you're the battleship and you're the general contractor, you can hardly come in and say, well, you know, the steel company's just decided to sell their steel to somebody else. You don't get off the hook. That's exactly right, but I don't believe it has any relevance in the context of 52-12-4-F, which says that if you, GIV, are not at fault or negligent and if any of these force majeure things happen, then you have an excuse. Thank you, Your Honor. Thank you. Case is submitted.